UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00372-FDW-DSC

| | |
|---|---|
| **Total Petrochemicals and Refining USA, Inc.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **RSI Leasing, Inc.** ) | |
| **RSI Logistics, Inc.,** ) | |
| ) | |
| **Defendants/ Third-Party Plaintiffs,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **A&R Logistics,** ) | |
| ) | |
| **Third-Party Defendant.** ) | |

THIS MATTER is before the Court on Defendant RSI's Partial Motion to Dismiss, (Doc. No. 13), and Third-Party Defendant A&R Logistics' Motion for Partial Judgment on the Pleadings. (Doc. No. 31). Both Motions are now ripe for review. For the reasons stated herein, the Court hereby GRANTS IN PART and DENIES IN PART Defendant RSI's Motion to Dismiss (Doc. No. 13) and GRANTS IN PART and DENIES IN PART Third-Party Defendant A&R Logistics' Motion for Partial Judgment on the Pleadings. (Doc. No. 31).

I. **BACKGROUND**

Total Petrochemicals and Refining USA, Inc. ("Plaintiff TPRI") filed this lawsuit on July 13, 2020 against Defendants RSI Leasing and RSI Logistics ("RSI Defendants" or "RSI"). (Doc. No. 1). Subsequently, RSI Defendants filed and amended a third-party complaint against A&R Logistics ("Defendant A&R"), culminating in a Second Amended Third-Party Complaint filed on October 14, 2020. (Doc. No. 30).

### a. The Parties

Plaintiff TPRI is incorporated in Delaware, has its principal place of business in Texas, and conduct substantial business in North Carolina. Id. at p. 1. Plaintiff TPRI refines, produces, and distributes petrochemical products. Id. at p. 2. RSI Defendants are incorporated and have their principal places of business in Michigan and conduct substantial business activity in North Carolina. Id. at p. 1. Defendant RSI coordinates and manages the "inflow and outflow of different products from various sources" at a railway terminal located in Pineville, North Carolina. Id. at pp. 2-3. Third-Party Defendant A&R Logistics is incorporated in Illinois, has its principal place of business in Kentucky, and conducts substantial business in North Carolina. (Doc. No. 30, p. 2). A&R Defendant provides transport services for companies like Plaintiff TPRI. See (Doc. No. 1, p. 3).

### b. Factual Allegations

On June 27, 2019, a driver with Defendant A&R allegedly hauled and delivered 32,300 pounds of 3620WZ in pelletized form to the railway terminal in Pineville for further transport to one of Plaintiff TPRI's customers, AptarGroup Inc ("Aptar"). (Doc. No. 1, pp. 3, 5). Plaintiff TPRI produces 3620WZ, which is a "polypropylene polymer product" allegedly used by Aptar to "manufactur[e] lids for baby formula packaging." Id. at pp. 3, 5. Upon arrival at the terminal, Defendant A&R's driver allegedly "provided RSI personnel with paperwork which identified WFRX 884806 as the appropriate railcar for the offload of the 3620WZ product." Id. at p. 3. RSI personnel allegedly used this paperwork in conjunction with a "previously-used" Excel document to prepare the Loading Instructions for Defendant A&R's driver. Id. Plaintiff TPRI alleges RSI personnel incorrectly prepared the Loading Instructions, which directed the A&R driver and RSI

personnel to offload the 3620WZ product into railcar FINX 10469, instead of railcar WFRX 884806. Id.

Upon receiving the Loading Instructions, RSI loading personnel allegedly realized that railcar FINX 10469 already contained a different pelletized polymer and allegedly attempted to confirm with RSI office personnel that FINX 10469 was the correct railcar for the 3620WZ. Id. at p. 4. Plaintiff TPRI alleges RSI office personnel "erroneously confirmed" that FINX 10469 was the proper railcar for the 3620WZ. Id. After receiving confirmation from RSI office personnel, RSI loading personnel allegedly offloaded all 32,300 pounds of 3620WZ into railcar FINX 10469. Id. at p. 5. Plaintiff alleges this improper offload resulted in cross-contamination of the 3620WZ product with the pelletized polymer already loaded in the FINX 10469. Id. Plaintiff alleges the cross-contaminated product was delivered to its client Aptar and subsequently used in the manufacturing of lids for baby formula packaging. Id.

Plaintiff allegedly learned of the cross-contamination on July 11, 2019, when an RSI manager notified Plaintiff of "RSI's self-described 'mistake.'" Id. at p. 6. Upon learning of the cross-contamination Plaintiff allegedly notified Aptar of the issue, and Aptar was forced to "scrap its inventory of lids manufactured" with the contaminated product and recall those lids already manufactured and distributed. Id. at pp. 6-7. Plaintiff allegedly incurred the cost of remedying the contamination and recall, which included the following costs: (1) the cost of removing and properly disposing of the contaminated product; (2) the cost of arranging and delivering a replacement shipment of the 3620WZ; (3) the cost of Aptar's scrapped inventory; and (4), the costs associated with Aptar's recall of the lids made with the contaminated product. Id. at p. 7.

In response to the alleged cross-contamination RSI Defendants allegedly prepared a "Corrective Action Plan," which was provided to Plaintiff. Id. Then, on October 29, 2019, Plaintiff

allegedly notified RSI Defendants of its claim for reimbursement of the costs allegedly paid to remedy the cross-contamination. Id. at pp. 7-8. Plaintiff alleges that, "despite acknowledging responsibility and admitting fault on numerous occasions," RSI Defendants have failed to negotiate in good faith with Plaintiff to address and remedy the consequences of the cross-contaminated product. Id. Accordingly, Plaintiff alleges RSI Defendants are liable for negligence, gross negligence, punitive damages, violating North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), and that RSI Defendants have been unjustly enriched. Id. at pp. 8-13. RSI Defendants moved to dismiss all claims except for the negligence claim, (Doc. No. 13-1, p. 1), and filed a third-party complaint against Defendant A&R, seeking contribution and indemnification in the event RSI is held liable. (Doc. No. 30). Defendant A&R moved for partial judgment on the pleadings with respect to RSI Defendants' Second Amended Complaint for contribution and indemnification. (Doc. No. 31). In the interest of judicial efficiency, the Court addresses both motions herein.

## II. STANDARD OF REVIEW

### a. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when the pleading party fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal "sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); accord E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive only if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

4

662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### b. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A 12(c) motion is reviewed under a standard similar to that which is used in Rule 12(b)(6), with the "key difference being that on a 12(c) motion, the Court is to consider the answer as well as the complaint." Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) (internal citations omitted). "In resolving a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view the facts in the light most favorable to the nonmoving party." Sports Med Properties, LLC v. Talib, No. 3:19-cv-00082-FDW-DSC, 2019 WL 3403372, at *2 (W.D.N.C. July 26, 2019). The Court, however, need not "accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarranto v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal citations omitted). Judgment on the pleadings is only appropriate when, after taking all of the non-moving party's factual allegations as true and drawing all reasonable inferences in its favor, the movant demonstrates there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Marx Indus., Inc. v. Baseline Licensing Grp., LLC, 2010 WL 4790169, at *1 (W.D.N.C. Nov. 18, 2010).

5

### III.     RSI Defendant's Motion to Dismiss

RSI Defendants move to dismiss all but one of Plaintiff's claims. (Doc. No. 13-1, p.1). In their Motion, RSI Defendants argue that Plaintiff has failed to state a claim for relief for unfair and deceptive trade practices, unjust enrichment, gross negligence, and punitive damages. Id. The Court addresses each argument in turn.

#### a.   Unfair and Deceptive Trade Practices Claim

N.C. Gen. Stat. § 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." To state a claim for relief under this statute, a plaintiff must show: "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce and (3) plaintiff was injured as a result." Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 617, S.E.2d 664, 671 (N.C. Ct. App. 2005) (citation omitted). North Carolina courts have held an unfair practice is one that is "'immoral, unethical, oppressive, unscrupulous, or substantially injurious,'" and a deceptive practice is one that "'has the capacity or tendency to deceive.'" Id. (quoting Edwards v. West, 495 S.E.2d 920, 923 (N.C. Ct. App. 1998)). Ultimately, "to prevail on a UDTPA claim, plaintiffs must demonstrate 'some type of *egregious* or *aggravating* circumstances.'" Curtis B. Pearson Music Co. v. Everitt, 368 F. App'x 450, 455-56 (4th Cir. 2010) (emphasis in original) (quoting Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)).

In construing the allegations in the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff has not sufficiently alleged RSI Defendants violated North Carolina's UDTPA. Plaintiff has not alleged RSI Defendants have acted egregiously, unfairly, or in such a way that has a tendency or capacity to deceive. All Plaintiff has alleged is that RSI Defendants "failed to negotiate in good faith" to reimburse Plaintiff for the costs it incurred in unilaterally

6

choosing to remedying the cross-contamination. (Doc. No. 1, p. 8). Although Plaintiff argues otherwise in its Opposition Motion, see (Doc. No. 18, p. 7), the Complaint alleges no facts to suggest that RSI promised to *compensate* Plaintiff for any costs incurred in remedying the cross-contamination and then reneged on that promise in an unfair or deceptive manner. At best, the allegations present a picture of miscommunication between Plaintiff and RSI and a misunderstanding of each party's expectations for the other in the wake of the cross-contamination. Simply put, RSI's alleged behavior does not plausibly suggest the type of egregious behavior targeted by the UDTPA. Accordingly, this Court hereby DISMISSES Plaintiff's claim for relief under North Carolina's Unfair and Deceptive Trade Practices Act.

### b. Unjust Enrichment

When asserting a claim for unjust enrichment under North Carolina law, a plaintiff must show that "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted the benefit, and (3) the benefit was not conferred officiously or gratuitously." Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enters., LLC, 742 S.E.2d 555, 561 (N.C. Ct. App. 2013). However, not every benefit that enriches a defendant constitutes unjust enrichment. "'Where a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for their value." Homeq v. Watkins, 572 S.E.2d 871, 873 (N.C. Ct. App. 2002) (quoting Wright v. Wright, 289 S.E.2d 347, 351 (N.C. 1982)); see also Health Mgmt. Assocs., Inc. v. Yerby, 715 S.E.2d 513, 520 (N.C. Ct. App. 2011) ("[P]laintiffs' payment of the settlement agreement on behalf of defendants was voluntary and unsolicited. Defendants had not authorized [plaintiff] to act on their behalf . . . [and] did not execute the settlement agreement.").

Here, Plaintiff has not sufficiently alleged a claim of unjust enrichment. Assuming *arguendo* Defendant was benefitted when Plaintiff acted to remedy the cross-contamination, Plaintiff alleges no facts to suggest that Defendant consciously accepted that benefit. The Complaint indicates Plaintiff and Defendant initially communicated about the cross-contamination on July 11, 2019, but the next communication between the parties did not occur until Plaintiff submitted its claim for reimbursement to Defendant on October 29, 2019. (Doc. No. 1, pp. 6-7). There are no factual allegations that Defendant authorized or solicited Plaintiff to remedy the cross-contamination on Defendant's behalf; rather, the Complaint alleges Defendant offered general assistance in remedying the mistake upon Plaintiff's request for such assistance. Id. at p. 6. Because there are no factual allegations that Defendant induced or solicited Plaintiff to make payments to Aptar, Plaintiff has failed to state a claim for unjust enrichment. Accordingly, the Court hereby DISMISSES Plaintiff's unjust enrichment claim.

### c. Gross Negligence

To state a claim for gross negligence, a plaintiff must show defendant was negligent and that such negligence was "willful, wanton, or done with reckless indifference." Sawyer v. Food Lion, Inc., 549 S.E.2d 867, 870 (N.C. Ct. App. 2001). Willful and wanton conduct is "carried out with a wicked purpose," id., to the extent that the conduct "manifest[s] a reckless indifference to the rights of others." Foster v. Hyman, 148, S.E.2d 36, 37-38 (N.C. 1929). Here, Plaintiff has plausibly alleged gross negligence because the Complaint sets forth allegations that the cross-contamination in this instance is the third incident with "factually similar contaminations" caused by RSI's acts or omissions. (Doc. No. 1, p. 10). Accordingly, Defendant's motion to dismiss Plaintiff's gross negligence claim is hereby DENIED.

8

Case 3:20-cv-00372-FDW-DSC   Document 35   Filed 11/19/20   Page 8 of 12

### d. Punitive Damages

N.C. GEN. STAT. § 1D-15(a) provides for an award of punitive damages when a defendant is found liable for compensatory damages and has acted in a willful or wanton way. Here, Plaintiff has sufficiently alleged that RSI Defendants were grossly negligent, which requires willful or wanton conduct. Although punitive damages are not properly pled as an independent claim for relief, Funderburk v. JPMorgan Chase Bank, N.A., 775 S.E.2d 1, 8 (N.C. Ct. App. 2015), Plaintiff has alleged sufficient facts to support its potential entitlement to such an award. As such, the Court hereby DENIES Defendant's Motion to Dismiss Plaintiff's claim for punitive damages.

### IV. THIRD-PARTY DEFENDANT A&R LOGISTICS' MOTION FOR JUDGMENT ON THE PLEADINGS

RSI Defendants initially filed their Second Amended Third-Party Complaint on October 14, 2020. (Doc. No. 30). In their Second Amended Third-Party Complaint, RSI Defendants assert two claims against Defendant A&R: (1) contribution in the event RSI is found negligent or grossly negligent, or alternatively, (2) that A&R must indemnify RSI for any liability premised on negligent or grossly negligent conduct. (Doc. No. 30, pp. 7-8). In the Second Amended Third-Party Complaint, RSI Defendants assert the following factual allegations in support of its contention that Defendant A&R is a joint-tortfeasor: (1) the A&R driver allegedly arrived to perform 3620WZ offload unannounced, which was "unusual;" (2) the A&R driver allegedly failed to "cross-check or question" the Loading Instructions even though the railcar number listed in the Instructions and in the original paperwork was inconsistent; (3) the A&R driver allegedly failed to provide any original paperwork to RSI personnel, which prevented RSI personnel from veryifying the correct railcar; and (4) the A&R driver allegedly failed to confirm the correct railcar when he began to unload the 3620WZ into a railcar filled with a different product. Id. at pp. 3-6.

Defendant A&R filed an Answer and Motion for Partial Judgment on the Pleadings on October 20, 2020. (Doc. Nos. 31, 32). In its Motion for Partial Judgment on the Pleadings, Defendant A&R seeks dismissal of all of RSI's claims except for the contribution claim premised on ordinary negligence. (Doc. No. 31-1, p. 2). Because the Court has dismissed Plaintiff TPRI's claims under the UDPTA and for unjust enrichment, RSI Defendants are potentially liable for negligence, gross negligence, and punitive damages. However, RSI Defendants assert they "do not seek contribution or indemnification from [Defendant A&R] for any award of punitive damages" sought by Plaintiff TPRI. (Doc. No. 33, p. 3). Accordingly, the Court GRANTS Defendant A&R's Motion for Judgment on the Pleadings to the extent RSI seeks contribution or indemnification for any punitive damage award sought by Plaintiff TPRI. Thus, the Court only considers Defendant A&R's Motion with respect to contribution and indemnification for negligence and gross negligence.

### a. Contribution

With respect to the issue of contribution for gross negligence, Defendant A&R argues contribution for gross negligence is barred because gross negligence requires a finding of intentional conduct, and the right of contribution does not exist for intentional conduct under North Carolina law. (Doc. No. 31-1, p. 7). Defendant A&R's argument is misplaced. Under North Carolina's Uniform Contribution Among Tort-Feasors Act, "there is no right of contribution in favor of any tort-feasor who has intentionally caused . . . the *injury*." N.C. Gen. Stat. § 1B-1(c) (emphasis added). The North Carolina Supreme Court has been careful to distinguish between gross negligence and intentional torts. Gross negligence occurs "when the *act* is done purposely and with knowledge that such act is a breach of duty to others," but "an act . . . moves beyond the realm of negligence when the *injury or damage* itself is intentional." Yancey v. Lea, 550 S.E.2d

155, 158 (N.C. 2011) (emphasis in original), *superseded on other grounds by* Piazza v. Kirkbride, 827 S.E.2d 492 (N.C. 2019). Thus, contribution for gross negligence is not prohibited by § 1B-1(c) because the statute prohibits contribution when the tortfeasor intended the *injury*, not the *act*. Accordingly, Defendant A&R's Motion for Judgment with respect to RSI's contribution claim for gross negligence is DENIED.

### b. Indemnification

Defendant A&R also Moves for Judgment on the Pleadings with respect to RSI's alternative claim for indemnity, (Doc. No. 31-1, p. 9). Defendant A&R argues that RSI's indemnity claims must fail because RSI asserts a claim for implied-in-law indemnity, which requires passive negligence, and RSI was actively negligent. Id.

North Carolina law allows for a passively negligent tortfeasor to be indemnified by an actively negligent tortfeasor. Kaleel Builders, Inc. v. Ashby, 587 S.E.2d 470, 0475 (N.C. Ct. App. 2003). If RSI Defendants are found liable for gross negligence, they cannot be passively negligent. See D'Alessandro v. Westall, 972 F. Supp. 965, 972 (W.D.N.C. 1997) ("Because gross negligence is a greater quantum of fault than passive negligence . . . if [defendant's] gross negligence is found to have caused the . . . injury, [the defendant] could not also be found to have been passively negligent.") (citing Gray v. Small, 408 S.E.2d 538 (N.C. Ct. App. 1991), *aff'd*, 415 S.E.2d 362 (N.C. 1992)). Accordingly, the Court GRANTS Defendant A&R's Motion for Judgment on the Pleadings with respect to RSI's alternative claim for indemnification of gross negligence.

Defendant A&R also argues that RSI's alternative indemnification claim for ordinary negligence fails because "RSI's pleadings establish its own active negligence." (Doc. No. 31-1, p. 11). However, RSI points out that it expressly denies any allegations of negligence in its Answer. (Doc. No. 33, p. 8); see also (Doc. No. 14, p. 10). Additionally, RSI's Second Amended Third-

Party Complaint is premised on allegations of Defendant's A&R's active negligence. See generally (Doc. No. 30). Thus, there is a genuine issue as to whether RSI Defendants were indeed negligent, and if so, whether they were actively or passively negligence and judgment on the pleadings is inappropriate. Accordingly, the Court hereby DENIES Defendant A&R's Motion for Judgment on the Pleadings with respect to RSI's alternative claim for indemnification of ordinary negligence.

V. **CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART RSI Defendants' Motion to Dismiss. (Doc. No. 13). Plaintiff's claim pursuant to North Carolina's UDTPA, and its claim for unjust enrichment are hereby DISMISSED. The Court also GRANTS IN PART and DENIES IN PART Defendant A&R's Motion for Judgment on the Pleadings. (Doc. No. 31).

IT IS SO ORDERED.

Signed: November 19, 2020

Frank D. Whitney
United States District Judge